Good morning, Your Honors. I'd like to reserve three minutes for rebuttal, if that's okay. Yes, and I'll try to help you with that, but ultimately you'll be responsible. I understand. Thank you, Your Honor. Good morning. My name is Jared Richards, and I am the attorney for Appellate Stephen Stubbs. Where the confines of Thurber were at, there the rights of Fifth Amendment Miranda began. And as a necessary and ultimately intertwined aspect of the Fifth Amendment right to counsel, is the Fourth Amendment right in counsel to be free of search and seizure without probable cause. Without the right of the counsel to be secure in his person without threat of arrest, without probable cause, we cannot have an effective right to counsel. Now, in addition, it is clearly established that under due process of law, a person has the right to not be maliciously prosecuted wherein the officer makes intentionally false misrepresentations. People have a right to counsel, but do they have a right for counsel to be right next to them wearing a gun while police are attempting to issue a citation or, you know, to the person or to the client, I guess? Perhaps under if this were an ordinary Burkhammer stop, that would be a question. I'm sorry? Perhaps if this were an ordinary routine Burkhammer traffic stop that was contemplated in Burkhammer, that would be the question that we'd have to go down. But the issue here is that this was not a routine stop. It had ceased to be a routine stop. The officers had particularly invited Mr. Stubbs to be present. And there is -- Wait. Say it again. The officers invited? Sure. Make that statement again. What was that? That the officers originally had invited Mr. Stubbs to be present. How is it be present where? In the parking lot or what? In the parking lot in the immediate vicinity of the interrogation that was going on. Where is that in the record? I don't see that in the record. It looks like from my review of the record, and I would like to see where it is in the record, that this individual came in, the police, to the parking lot area. I thought your client was inside the establishment. Yes. Somebody called him out. I don't think it was the police officers. But tell me if it was. That's correct. So the way it went, Your Honor, is that the officers, Mr. Desmarais had gotten off his motorcycle and was heading into the — was heading towards the building where he was going to attend a seminar where my client was giving a Second Amendment seminar. The officers detained him, and somebody from a friend of Mr. Desmarais said, call the lawyer. Mr. Stubbs stepped out, and Mr. Desmarais pointed to Mr. Stubbs and said, bowtie, that's my lawyer, a bowtie being Mr. Stubbs' nickname. At that point, the officers — and there's a video that has, I believe, been submitted to the Court showing that the officers approached Mr. Stubbs, and Mr. Stubbs approaches the officers. Under Mr. Stubbs' deposition, and quite frankly, we can hear it in the actual video itself, Mr. Stubbs — and I don't believe that this was a disputed fact — Mr. Stubbs identifies himself as counsel. Mr. Desmarais says, that's my counsel. And Mr. Stubbs says, he has the Fifth Amendment right to counsel. The two officers — Well, that's not an accurate statement, is it? The Fifth Amendment right to counsel applies in, you know, in at least some kind of criminal proceeding. It doesn't apply on the street. In other words, you know, somebody, a traffic officer pulls you over for a citation. You can say, wait a minute, I want to get my lawyer? Well, if this — so if this were a normal traffic stop, I would normally say yes. Forget about normal. I'm saying there is no right to counsel when you're being given a traffic citation, is there? There is. Not a constitutional right. Maybe there's one in — maybe there's one in Nevada, but not a constitutional right. No. The — Is there? Can you cite me a case that says that? Under Berkmer, you would not normally have the right to counsel under an ordinary traffic stop. Normally, as if this is not — so this is an abnormal situation? This is an abnormal traffic stop, Your Honor. And that's — that becomes our point. Well, I'm sorry. So regardless of whether he had the right to counsel — I guess we should probably define why is this an abnormal traffic stop. Okay. Abnormal for two reasons. One is that the entire traffic stop was part of an intelligence-gathering activity by intelligence tax force. As Mr. — as Officer del Rosario says in his deposition and in trial — or rather, in the trial transcript, that he had been meeting with then-Sergeant Yatome prior to the stop. That's established by what? By Mr. Stubbs' testimony? No. That's in the trial transcript of Officer — in the testimony of Officer del Rosario. But regardless, let's imagine for a moment that this was a completely ordinary traffic stop. And that although Mr. Stubbs claimed the Fifth — or said the Fifth Amendment right to counsel, let's suppose that it did not exist at that time. Regardless, the officers allowed him to be there. Mr. Stubbs offered to give his firearm. The officers declined, saying it wasn't necessary. And then we have, for the next however many minutes, Mr. Stubbs being present, during the interrogation. And there's a finding of fact in the last page of the trial transcript, where the — where the judge ruled that Mr. Stubbs was a perfect gentleman, that the two officers initially were perfect gentlemen, that there was no issue until Sergeant Yatome arrived. And then the special unit came up. Exactly. And at that point, no matter what this traffic stop was before, at the second that the special unit arrives in three unmarked SUVs with multiple police officers dressed in tactical gear, with intelligence task force, with at least one officer carrying an AR-15, swarming the scene surrounding Desmarais and Mr. Stubbs. At that point, whatever this was before had significantly and utterly changed. That where we have this — the U.S. Supreme Court in Berkman saying that the reason why you don't need counsel at a normal traffic stop is because it's not intimidating. This isn't a — a normal custodial detention where people feel more intimidated because of the oppressive environment. That had changed once we have people with semiautomatic weapons in tactical gear surrounding the detainee and Mr. Stubbs. From that point on, from that second on, this was no longer a normal and standard traffic stop. Well, suppose I — well, I want to agree with it, but we'll go along with your assumption that circumstances changed, and — and your — and your position apparently is that the changed circumstances gave rise to a right to counsel. Yes. Right? Now, let me ask this question. Is it crucial to your case, determinative — determinative whether or not there was a right to counsel? In other words, if we decide there was not a right to counsel in that situation, do you lose? No. Well, then go — go on to something else, then. Okay. So the — so further, we have the issue of the false statements by Officer Utomi in her malicious prosecution case. So with Officer Utomi, repeatedly — and this is important because we see it repeatedly throughout Officer Utomi's testimony. We see it in the criminal trial. We see it in — throughout — peppered throughout the answering brief that she says 3 feet, 3 feet, 3 feet, that all I wanted to do was ask him to move 3 feet because I was concerned about the location of his gun in proximity to Desmarais. She wasn't worried about Mr. Stubbs himself having the weapon, but just he was — they were worried about Desmarais having access to the weapon. But the problem is that that is a — not only a disputed fact and thus inappropriate for summary judgment, it's a provably false statement because we can see in the video when she says, I need you to move over there, we see her finger point not perpendicular to the ground, not down towards the ground, but up north of perpendicular to the ground, meaning that this is not a 3 feet she's trying to get him to move. She's trying to get him to move to the building, I think, about — was about 30, 40 feet away, completely out of the area where she was — He was — he was arrested or cited or arrested for interfering with the — what, Under a general allegation, but the specific allegation was, when she goes to a criminal trial, was that he refused to move 3 feet away because all I wanted him to do was move 3 feet away. I know that, but the purpose of the 3-foot order, I'll call it, is to — is to sort of ease the process of the officer talking to the motorcycle driver, right? That is ostensibly what she was — so she was, by her own words, was worried that the motorcyclist would have access, would be able to reach Mr. Stubbs' weapon. But Mr. Stubbs had already offered to disarm. And Mr. Stubbs was more than happy to move 3 feet away. It was the 10 to 15 to 30 feet away that he was not willing to move while his client was being surrounded by intelligence task force in tactical gear. I know you're out of time, but what's the best case? What's the — that you would point us to for your position here? Actually, I think that Berkemer itself is on all fours in that it talks about how the normal custodial stop for — the normal traffic stop is non-threatening. It is an environment where somebody, although they may not be free to leave, they don't feel pressured to give statements. They don't feel pressured. And the Court is very clear in Berkemer that that's one of the elements of a normal traffic stop. But once that changes — and Berkemer tests the edge of the Miranda right. And so once we have this is no longer a Berkemer-type stop, then we know that Miranda begins and the right to counsel begins. Thank you. Thank you, Your Honors. I'll give you one or two minutes afterwards. Thank you. Good morning, Your Honors. Craig Anderson — may it please the Court — Craig Anderson on behalf of Lieutenant Yatome and the Las Vegas Metropolitan Police Department. This was a routine traffic stop. It just happened to occur in kind of a challenging environment. Well, I don't know if it's routine. I mean, the background is that this special unit that stopped these motorcycle riders for every insignificant equipment violation, right? Yes, and that would — Isn't that the record? It's not normal. I mean, it's almost like harassing. Well, what you have is you have a group of motorcycle clubs congregating. So the special unit is on scene for officer presence to try to diffuse the situations and avoid any unforeseen acts of violence. Well, the officer, I don't know, diffused the situation. It seemed like it ignited the situation here. Because the — I mean, will you agree? I mean, looking at the video, the officer, the original officer, the siding officer, was proceeding relatively smoothly in siding the, you know, the individual. Mr. Stubbs was there, but everything was calm. All of a sudden, this unit arrives. And instead of facilitating, you know, it seems like, or keeping things calm, it seems like that whether they were within their rights under the law, that the officers were appropriate in that regard is something. But it seems like it just interjected drama unnecessarily. I mean, you must have seen the video. Oh, absolutely. And so what happens is you have Sergeant Williams and you have Del Rosio, who are patrol officers. They're not in the special unit. They're not experienced with these type of situations or this type of — Can you speak into the microphone? Yes. So you have Sergeant Williams — What difference does being experienced in these situations make when, as Judge McGeer said, the way the officer who stopped the motorcycle driver was proceeding, you know, the citation process is moving along in a very normal manner. It is. But you also have this group of bikers now congregating. Forty to fifty bikers are now encircling the officers. So Lieutenant Utomi, who is the experienced person in this field, arrives on scene with her unit to — And she tries to — in effect, she, you know, like, asserts control and command, doesn't she? Well, now, when she arrives, she goes to Sergeant Williams. And this is on the tape. So she is getting the background from Sergeant Williams. And what happens? Mr. Stubbs interrupts them. He comes into that conversation and starts yelling he has a Fifth Amendment right to counsel. So Lieutenant Utomi has not taken any action towards Mr. Stubbs or Mr. Desmarais at that point. And her concern, as the highest-ranking officer on scene, the person most familiar with these situations, is that you have an armed bystander within inches of the traffic-stopped individual, and she just simply wants to move that person away. But it's Mr. Stubbs that escalates the situation when he interrupts the conversation between Sergeant Williams and Lieutenant Utomi. He's not invited into that conversation. He's not asked to be there. He comes in and says he has a Fifth Amendment right to counsel. And that's what initiates this process. And then what Lieutenant Utomi does is you just need to stand over there. And Desmarais said it was 5 feet. And Lieutenant Utomi said it was 5 feet, or 3 to 5 feet. So it's just the issue is whether there was probable cause, okay, and whether that this was the right to counsel. That belongs to Desmarais, who did not file any pleading in this appeal. So the way, is Desmarais a party to this appeal? I would say no. He they appealed on behalf of Mr. Desmarais. He filed a brief, I think. No, he didn't. There's no arguments on him or his claims for the Fifth Amendment. Well, his name is in the caption of the case. I would say he's waived. We don't have to decide anything about him, right? No. I would say he's waived any arguments he has. He never filed, as far as I know, he never filed a brief. He's not your client on this appeal. He's not my client. All right. And so. So you're talking about probable cause. Obstructing. I wanted to ask some questions about that. Please. It seems like your position is there was probable cause for the officers to do what they did. Correct. And arrest him for obstructing, arrest Mr. Stubbs. Correct. But aren't many of the questions wrapped in the probable cause determination here fact-based? I mean, is this the kind of questions that we should leave to a fact-finder? Absolutely not. The questions here, the facts are essentially undisputed, that Stubbs verbally initiated contact with Lieutenant Yatome when he said, interrupted the conversation, and that the issue is whether it is reasonable for an officer to ask someone who is armed, and even if they weren't armed, to just move out of the grab area of the detained person. So give me the specific list of facts that you think established that Officer Yatome had probable cause for the arrest. Absolutely. The verbal initiation of contact by Mr. Stubbs, despite being armed, he insisted on standing inches away, that he rejected numerous warnings to move away, that he verbally stated that he would not comply, and that even after he was given a final warning where Lieutenant Yatome said, you are not, I'm paraphrasing here, but you are not going to comply, correct? He said that he would not comply because there was a Fifth Amendment right to counsel. So what Lieutenant Yatome did. Well, let me ask this question, kind of background. Why would his not moving away constitute obstruction? Okay. What was he obstructing? Okay. And let me finish one, the most important part. My question first. Okay. Not moving away is obstructing because it's impeding the investigation because it cannot. How is he impeding it? It cannot be conducted safely with an armed person standing in that close proximity. You mean if the officer has a subjective sense that it's not safe? An objective sense. A sufficient ground to say, get out of here? Yeah. This is an objective sense. This is whether a reasonable officer. The first officer said, no, you don't have to move away. In fact, he said, I'll give you my gun. He said, that's all right, keep it. Okay. Well, there's multiple ways to handle these situations, absolutely. You're looking at whether Lieutenant Yatome's actions fall within a zone of reasonableness. There's probably a thousand ways this could have been handled. And under Scott v. Heinrich. There's a thousand ways. If you don't do it her way, why is that obstructing? Her way has to be reasonable, has to be objectively reasonable, and then if you don't follow an objectively reasonable order, you're obstructing. And she gave multiple opportunities. And she didn't arrest until she realized Mr. Stubbs was not going to move or leave. So what did she do? She said, I'm going to move to Sumerius, 5 feet over here to this car. And what does Mr. Stubbs say? I'm going with him. He does not have the right to control the traffic stop. He does not have the right to dictate that. She was making reasonable accommodations to solve this problem. Because even after he was handcuffed, she says, I'm going to give you one more chance. By the way, everybody on the scene seemed to agree that who was the guy's name? Just Meris. The other guy had a right to counsel. And you don't challenge that, do you? Did they seem to agree to that? Yes. I would say they didn't have time to really. No one disputes that, you know, in the briefs or anywhere else, right, that he had a right to counsel and that Stubbs was his counsel. You mean that? I would say that no one disputed that in the record. But I would say under the law, he didn't have a right to counsel. Well, you never expressed that in your brief. Yes, we did in a footnote, and we certainly expressed it in the summary judgment pleadings, because that claim belongs to the Sumerius. We're not interested, really, as to whether there was a right to counsel. I don't think it matters whether Stubbs was an attorney or a bystander. They have the right to objectively, reasonably move him 5 to 10 feet away because he's armed. And any reasonable officer would agree. Well, no, because if he had a right to counsel and a right to consult with and advise his witness, then he has a right, you know, to be close enough to converse confidentially with his client. And, well, if he's being interrogated. As DeSmeris said, I was never asked a single question. Yatomi never said a word to DeSmeris. If he was being interrogated, absolutely, Your Honor. But he was – there was no intent to interrogate him. Even after Stubbs was in the police car and out of any way he could be involved himself, they still never asked DeSmeris a single question. That is a subjective belief that Mr. Stubbs has, that that was what they were intending to do. There is no objective evidence to that. And so I think that's important here, that throughout discovery, they didn't create any issue of fact that they wanted to interrogate DeSmeris. All Lieutenant Yatomi was concerned about was the congregating bikers, the fact that there was an armed individual within inches of a detained person, and just wanted to move him. And I think the way you get to the obstructing is the multiple opportunities. There were four opportunities she gave him. And at the very end, she said, I'm going to give you one more chance. Are you – I mean, will you stand over there? And he said, no, Fifth Amendment right to counsel. He was not going to comply no matter what. I don't think a person has the right to control the officers at a traffic stop. Roberts. May I ask a question about the malicious prosecution claim? Absolutely, Your Honor. If, as Mr. Stubbs alleges, a jury could find that the lieutenant provided false information and concealed exculpatory information in order to ensure the prosecution of Mr. Stubbs, would the lieutenant be entitled to qualified immunity? Okay. That's a two-part answer. The first answer is if there's probable cause for the arrest, then the malicious prosecution claim fails. If there is not probable cause — Wait a minute. He's asking about the malicious prosecution. Correct. And probable cause is a bar to a malicious prosecution claim under Lassiter. If there was not probable cause, then there would have to be evidence in the record that she lied or concealed evidence. Here, they didn't even attach both of her reports to the brief. We did. Because both reports are internally consistent with each other, and they're consistent with the audio, and they're consistent with the video. There's no false statements. There's no misrepresentations in those statements. Second of all, Lieutenant Utomi testified, I gave everything to the district attorney. Now, whether the district attorney turned that over in the criminal case is not her responsibility. They never obtained any evidence or deposed the district attorney to find out what did you receive or what not. But the testimony was, I gave them everything. I don't know what they did with it. So even if there wasn't probable cause, it would fail because she didn't take any evidence in this case. Does that answer your question, Your Honor? Thank you. Any other questions, Your Honors? No, thank you. Thank you. I'll give you two minutes. Thank you. So, quickly, the — everything that was just said was dependent upon Officer Utomi's, Lieutenant Utomi's version of the facts. Their entire brief, their entire argument, the entire probable cause, their entire statement that she didn't make misrepresentations are all based on her own subjective and, quite frankly, wrong interpretation of facts that are disputed. And thus, the question that Your Honor's asked earlier is correct. These are things that should have been decided by a decider of fact as to what actually happened. Let me ask you just — you agree that to maintain a claim for malicious prosecution, you have to show that defendants prosecuted Mr. Snubbs with malice and without probable cause? Yes. And that they did so for the purpose of denying a constitutional right? That is correct. All right. What specific constitutional right are you relying on here? The right to due process encompasses the right to not be maliciously prosecuted. But are you talking about — Now, the — Due process. Yeah. The — or equal — I'm sorry. The equal — the right to equal protection of the law encompasses the rights to be free of malicious prosecution. Now, the — Well, are you claiming to support that position that — that the Las Vegas police or any particular officer supplied any false information to the prosecutor? Yes, I am. So from the very beginning — Who supplied that was false? So from the very beginning, you have Officer Utomis — the whole argument of fact of what her purpose of the arrest was, her stated purpose throughout all of her testimony and at the criminal trial was, I needed him to move three feet away so that Desmarais would not have access to his weapon. But that is belied by the fact that one of the — if you look at SER 133, the transcript of what was actually said, one of the first words out of Mr. Stubbs' mouth to her was, take my weapon. That when she says, I only wanted him to move three feet, and she repeatedly said, three feet, three feet, three feet, the report that was kept out was her contemporaneous statement of it was 10 to 15 feet, which would be out of earshot. And, in fact, when we look at the video, she is pointing towards the building that's about 30, 40 feet away. The statement that she makes, that there were a bunch of unruly bikers surrounding, is not at all true and is an issue of disputed fact. Those — there were people that were standing next to a building, but they were not rowdy. There's a video. The only voice you can hear on the video is the occasional commentary of the videographer. And at the very end, when he does make not an angry but a loud — a louder statement clearly to the officer, saying, I hope you enjoy persecuting Christians. I hope you feel good about this. But that was after the arrest was complete. There is no — there might have been people there, but there was no unruly crowd, and they certainly weren't surrounding. These statements by Officer Utomi that are justifying what she did, and specifically that all I wanted him to do was move three feet away, is abjectly and provably false. And that was the entire basis of the prosecution, that they wanted to say, Your Honors, he was being unreasonable. Mr. Stubbs being completely unreasonable because he refused to move more than three — he refused to move three feet away when he was carrying a sidearm, when the absolute objective truth is that he offered to surrender a sidearm not only to Officer Del Rosario, but also to Lieutenant Utomi. Sotomayor, thank you both for your presentations here today. The case of Steven Stubbs v. Las Vegas Metropolitan Police Department and Yesenia Utomi is now submitted. Thank you.
judges: Tashima, Murguia, Chatigny